First case, United States v. Conrad, Mr. Beck. Thank you, Your Honor. Thank you, Judge Duncan, Judge Keenan, Judge Diaz. I rise today to argue that it's improper in a case such as Mr. Conrad's to delay for 96 months his psychological evaluation incompetency hearing. The statute 4243C contemplates that the hearing will happen within a 40-day period. Indeed, the statute used the mandatory word shall because it wants that hearing to happen promptly. The reason that Congress in the IDRA was insistent on a prompt hearing is because of the history which gets put forward in the various provisions of the IDRA. Namely, that we need to have these hearings so that we can have prompt government oversight, so that if somebody is mentally ill, that they can get treatment, that they can recover, and then upon recovery, they can be discharged from the insanity. Why do you assume that the client wouldn't be able to get treatment even absent this commitment hearing? Well, the client may or may not be able to get treatment absent the commitment hearing. The purpose of the statute is to provide oversight to... Do you think that Congress really contemplated this very peculiar scenario when it drafted the statute? This is a peculiar scenario. I don't think, quite frankly, anybody contemplated... The problem, right? That is the problem. But then the question becomes, what do we do with the statutes of Congress? And I think the answer is we enforce them best we can. And in this case, enforcing them best we can would be to insist upon a prompt hearing, an evaluation. But if the policy goal of the statute is twofold, both to ensure proper treatment, but also to protect the community from someone who is in need of treatment and might be a danger to incarcerated. It serves the following purpose. There's a separate statutory provision under 4246 that protects the public should Mr. Conrad be determined to be safe and dischargeable from the insanity case during the term of his incarceration. And then 4246 says that the burden then shifts to the government to prove upon his release. What Mr. Conrad wants is an opportunity to show that he's no longer mentally ill and safe. And so that the government would be required to meet the burden at the end period of his incarceration, rather than shifting the burden back to him. I'm sorry. Go ahead. How long ago? Wasn't Mr. Conrad's adjudication, what, seven years ago? It occurred in 2007, Your Honor. And hasn't he pled guilty at least a couple of times since then? He pled initially in the insanity proceedings, and then there was a separate, well, if you want to count the state court case, there was a state court plea, and then there was followed by the federal plea in which he received the 96-month sentence. Isn't it somewhat anomalous that he is now interested in a prompt adjudication? Well, Your Honor, after the remand from the Fourth Circuit, he asked the district court for a prompt adjudication and was told no because the criminal case was then pending. And that tendency of the criminal case essentially prevented him from having the prompt hearing that he desired. Thank you. Mr. Beck, it seems to me, though, that your argument runs flat up against the language of the statute because Section 4243 sets out as the defendant's burden of proof that his release would not create a substantial risk of bodily injury due to a present mental disease or defect. So how could he prove years before his release that his release would not create a substantial risk of bodily injury due to a present mental disease or defect? There's no way that he could or that any expert could opine as to that. I think, Your Honor, when you have an anomalous situation like this, I think the question that we're really asking in this anomalous situation is would his present release pose a danger to the public? And if the answer to that is no, it would not, then he should be taken off the insanity status and be put into the status of a normal, normal prisoner. This is important. And then what happens right before his, you're saying then right before his release, there's no reevaluation of his mental status? The government would then, under 4246, have the ability if the director of a facility in which he was housed, remember the Bureau of Prisons at any time it wants, can place him in a facility. If it places him in a facility, he could then object and the government would then have the burden to show that he at that time posed a danger to the public. And that would be the manner that the statute contemplates to protect the public. Moving on with my argument, Your Honor, I think it's not only 4243, but there are several provisions of the IDRA which are negatively impacted by the delay. One provision is, are the provisions in 4247. The Congress, when it adopted the RDRA, specifically contemplated that the Harmon procedures would be adopted. The Harmon procedures are the procedures for annual evaluation and motion filing if the defendant has recovered. Those procedures cannot be followed when there is an eight-year delay in the evaluation and hearing. Moreover, not only did Congress implement the Harmon procedures in 4247, Congress also implemented that habeas corpus was provided for because if those evaluations that the Bureau of Prisons would be doing on an annual basis, if those evaluations showed that somebody had recovered and that they should be released, then the director of the facility would put that into their report and presumably the defense, the defendant would file a motion for his release and the court would, the district court would then be required to evaluate the evidence and if it appeared that his release would not pose danger to the public, it would then sell order. These procedures are important for a variety of reasons. As I've said, the placement in a given facility is something because the Supreme Court in Vitek versus Jones said that a mental health placement is different than a normal prison placement. The prisoner has a liberty interest in not having that kind of placement. Also, the burden shifting that we're the initial 4243 having the burden and under 4246 the government having the burden because of the Supreme Court's decisions in such cases as Addington, that is important because we don't want to apply the wrong standards and the wrong procedures at the wrong points in time. Also, I would note that the cases that the government cited for delay, obviously, neither, although the Tucker considered a state custody case that was in one way similar, it was different in the respect that you had an individual who is not in the custody of the BOP. So, the BOP at the time did not have the custody of the defendant for the purpose of treatment and petitioning for that hearing wouldn't have been something practical given the federal government's comedy to the state government. The other case cited, Bowie, was just a short delay, not the 96 months that is sought in this case. I would note that the reference to the Harmon procedures and also the reference to these various procedures that Congress was at that time interested in the district court having, looking at the condition of the defendant, looking at whether he was receiving the mental health care that he needed and also if the care was not being provided adequately, making different and Congress put in the legislative history, this was not a matter that they felt comfortable with just assigning it to the Bureau of Prisons without judicial oversight. All of these reasons that support, I believe, a understanding of the law wherein Mr. Conrad will have a prompt hearing where the district court can evaluate and if he doesn't have mental illness, let him free of the insanity case and then serve out his period of incarceration. If at the end of his period of incarceration, he does present a danger to the community, then 4246 is the provision that allows the remedy. That provision allows the government and through the director of the BOP facility to file a notice and then for the parties to present evidence with the government bearing the burden of proof as opposed to Mr. Conrad bearing the burden of proof. Does that put him in a better position by virtue of the intervening felony than an individual who was not so incarcerated on another offense after the not guilty by reason of insanity adjudication? Your Honor is, of course, asking about the conditional release order that was vacated because of the Baker error. It does place him in a better position, but it was at the time that the criminal conduct happened, Mr. Conrad did not believe that his conditional release order was going to be vacated, so it's not like this scenario presented itself to Mr. Conrad and gave him a reason for engaging in criminal behavior which he otherwise would not have engaged in. It's just not a situation where he was motivated to violate the law in a way that he wouldn't otherwise have been motivated to do. And since the district court judges have the reasoning in Baker, it's also a situation which the district court can avoid in the future by simply following Baker and not entering conditional release orders without the indefinite commitment. Those are all my comments for now. I'd reserve the rest of my time. You have some time reserved. Thank you very much. Ms. Hudson. Thank you. Good morning. Excuse me. It is clear that the intent of the statute in 4243 establishes a protocol for release of a defendant. The court cannot release a person prior to a finding that he would not create a risk due to a mental disease or defect. Thus, the threshold question before the court in these circumstances is not just whether the defendant is dangerous at the outset. The question is whether the individual can be released based on whether the defendant can show that his release would not pose a risk or danger to the personal property of another. So I set out that threshold question because I think our summary really position is that when Conrad here is subject to a term of imprisonment, as a matter of fact, at the outset, I think as the court has noted, he's just not eligible for release. He cannot be released. And therefore, anything, any action that the court takes at this point regarding a hearing or an order that he might enter after a hearing would be a nullity. It would be an order that could have no effect when the defendant can't be released. The court then would be making a decision about whether or not to release a defendant or to commit a defendant or to conditionally release a defendant based on evidence that is current today, knowing at the outset when the defendant walks in the door for that hearing or the moment the order is entered, that the evidence is already stale. And the government doesn't think that the statute should be interpreted in a way that would require a court to enter an order that can have no effect. If the court sees the state of affairs in the government's view, Mr. Conrad is in the same position, really a better position, at the end of his sentence to be the public is in a better position. And for those reasons, we think that that this court should affirm the district court's order. What about the... Go ahead. Is your argument a statutory one or a policy one? I think they're both. I think our argument is that under the statute, the statute should not be interpreted again in a way that would require a court to enter an order now that can have no effect. But I think that our argument is absolutely consistent with the wording in the statute. For example, Mr. Beck, in his brief, argues that the statute should not apply to Mr. Conrad because he is not an acquitted person. But I think that an acquitted person has to be interpreted in context of the statutory language, which says that a person is covered by that statute if they have been found not guilty of the offense. And it is the offense charge. So I think clearly under the statutory language, that does apply to him. The court, turning to 4243C, the district court, I think there's some back and forth in the record even in the district court's view, but the district court had the initial 40-day hearing within 40 days. He entered the initial commitment order. He had the hearing. So I think our argument is that the record of the case reflects that the court did comport with the statutory language in that regard. We're just now, as the court noted at the outset, in a situation that I don't think anybody contemplated under the statute. The 4243E does simply say if after the hearing the court fails to find that a defendant's release would not create a risk, then the court shall commit the defendant. And I suppose we could make an argument that, again, within the confines of the statutory language, having had the hearing initially within the 40-day period, it is now after and it will be still after the hearing eight years from now. I don't know that that's our strongest argument, but I think we... Your argument though cuts both ways, I guess, because the fact that the court can't release this defendant because he's serving a term of imprisonment suggests that the statute, this particular statutory provision, should not apply to him. And as Mr. Beck argues, there's another provision, 4246, which is better suited to this defendant at the end of his release term. Why doesn't that work? Well, I think 4246, if I'm not mistaken, applies, and I think Mr. Beck acknowledged this in his argument, that 4246 applies to a person who is hospitalized. So it presumes that the institution in which Mr. Conrad is incarcerated had at some point in the eight-year term or whatever term of incarceration decided for some other independent reason based on his incarceration needed to be hospitalized and had already placed him there. That may or may not happen. You know, nobody has a crystal ball, and that brings me right back to the problem that I think Mr. Beck's argument has is that it really requires the court, if the court were to act now, it requires the court to sort of look out into the future and suppose, guess, or predict whether after incarceration Mr. Conrad's release would pose a risk to the community. Nobody knows that. Mr. Conrad may be in a worse position when he the earliest psychological evaluation we had suggested that he needs, he's dangerous if he's not in a structured environment. It may be that during the course of his term of incarceration in that very structured environment and taking his medications that he comes out at the end of that where he could immediately prove that his release would not pose a risk to anyone. So we think that causing the defendant to come in the door today with the burden of proving that his release would not pose a risk when that can't happen for eight years puts the defendant in a terrible position. How can he do that? The court might find if we proceeded today under the statutory language first that the defendant can't possibly meet his burden of showing that his release would not cause a risk for starters because he can't be released. The court could find alternatively that the defendant can't meet his burden because the defendant's evidence is stale when he walks in the door. The court could just find, I'm not saying the court would find that, but I'm just saying that to proceed now and to suggest that that puts the defendant in a better position to the government is counterintuitive. I think the defendant has the best chance of proving whether he should be released because he doesn't pose a risk at the end of that term of incarceration, as Mr. Beck argued earlier in some of the proceedings in the district court below himself. So for those reasons, we would ask the court to affirm the decision of the district court. Unless there are other questions. Thank you. Thank you. The government argument presupposes that somehow it's doing Mr. Conrad a favor by delaying his hearing until the end of the period of incarceration. And I don't believe that that's true. Do you believe it might be doing the public a favor? Because isn't at bottom that the purpose of a proceeding, it's primarily directed toward protecting the public from precisely the kind of circumstance that occurred during Mr. Conrad's conditional release. Yes. I believe that the public is best served by following the statutes of Congress, particularly when the IDRA has built mechanisms to protect the public and to protect Mr. Conrad. And how would that, but how do they play out? Let me suggest how they play out. The wording of 4243, it has in mind somebody who's subject to release at the time of the insanity acquittal. Therefore, that statute asks the question, not what somebody's condition is going to be at the end of a period of incarceration, but what is their present condition? Do they presently have a mental health disease? And does that present mental health disease make them dangerous to the public? If those are the conditions, then they remain committed. If those are not the conditions, then they're not subject to commitment. A prisoner, when they're in the Department of Corrections, has a right to, under VITAC versus Jones, to protest their mental health placement. But Mr. Conrad is not getting those rights. And in terms of the public's future right, Congress foresaw this very scenario, which is why 4246 was written with different statutory procedures. I don't know that Congress foresaw this scenario, but I guess the other problem is, Ms. Hudson brought up, is that under her reading of the statute, your client would have to have been committed or hospitalized in advance of any application of 4246. Is that right? That's right. He's presently at FMC Lexington, which would count, and he's objected to the delay and the government has not moved for a 4246 hearing. So, if he's going to get his rights, his rights to habeas, his rights to evaluation, his rights to challenge what the government is doing within the Bureau of Prisons, he best have the procedures that were designed by Congress to allow him to make those challenges. He's not saying he's going to win. I don't know what will happen if the evaluation and hearing happens. Maybe he will win, maybe he will lose, but he should be given that opportunity. And he should be given that opportunity in the manner that Congress said, which is that if the Bureau of Prisons keeps denying him, that he will have a right every 181 days to make a new showing upon the changes in his condition. And although this is definitely work for the district court and definitely work for the government, it is work that should be required given the protections that are in the statute for the benefit of Mr. Conrad, and it can be done so consistent with public safety. Thank you. Thank you very much. We will come down.
judges: Allyson K. Duncan, Barbara Milano Keenan, Albert Diaz